IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELEY JOHN BOOTH, and ADVANCED PERIOPERATIVE SERVICES, P.C., an Oklahoma professional corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   Case No. CIV-11-1101-M<br>) |
| HUBERT FU, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's June 2013 trial docket.

Before the Court is plaintiffs' Motion for Partial Summary Judgment with Brief in Support, filed April 1, 2013. On April 22, 2013, defendant Hubert Fu ("Dr. Fu") filed his response, and on April 29, 2013, plaintiffs filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction[1]

Plaintiff Keley John Booth ("Dr. Booth") is the president, sole shareholder, and sole director of plaintiff Advanced Perioperative Services, P.C. ("APS"). Since 2006, Dr. Booth has provided services to Integris Southwest Medical Center ("Integris") through APS.

In 2006, Dr. Booth began to develop a concept to enhance perioperative efficiencies ("the Concept") that he intended to introduce to Integris and market to other hospitals. Dr. Booth's first attempt to develop a practical application of the Concept was a color-coded magnet system. Dr.

---

[1] The facts in this introduction are set forth in the light most favorable to Dr. Fu.

Booth's magnets subsequently evolved into a Microsoft Excel spreadsheet ("the Spreadsheet").[2] Integris began utilizing the Spreadsheet in late 2007.

On or about May 30, 2007, Dr. Fu began work at Integris. In fall 2007, Dr. Booth and Dr. Fu discussed the idea of developing and commercializing software to assist with the perioperative process and move forward as partners (the "Project"). According to Dr. Fu, in 2008, Dr. Booth and Dr. Fu created Epics Medical ("Epics") as a d/b/a to further develop the Concept. Dr. Fu joined Epics as a partner in consideration for Dr. Fu's promise to share equally in the project costs incurred by Epics in developing the Epics JavaScript Program, a web-based JavaScript program that would translate some of the Concept to a usable application.

On or about June 26, 2008, Dr. Booth contacted ProAce Technology Services, Inc. ("ProAce") to assist Epics in developing the Epics JavaScript Program ("Epics Project"). On or about April 18, 2009, ProAce prepared a Discovery Report for Epics that identified the development plan and timeline for the Epics Project and provided Epics an estimated cost of $678,546.00. Shortly after receiving the Discovery Report, Dr. Booth negotiated with ProAce to provide a more limited scope of work to bring the initial costs of the Epics Project down to approximately $450,000.00.

According to Dr. Fu, in July 2009, Dr. Booth stated that he was unable to continue to fund the Project individually and wanted to fund the Project through APS in order to utilize the tax advantages of using pre-tax dollars instead of post-tax dollars. Dr. Fu asserts that, prior to the retention of ProAce, he informed Dr. Booth that he would not be able to contribute more than $100,000.00 towards the cost of the development. Dr. Fu further asserts that Dr. Booth advised him

---

[2]Dr. Fu contends that Dr. Booth was not the sole creator of the Concept or the Spreadsheet.

Case 5:11-cv-01101-M   Document 64   Filed 05/06/13   Page 3 of 8

that the Project would be funded through APS and that Dr. Fu could contribute as needed. Dr. Fu continued to attend several meetings with ProAce from August 1, 2009 to December 2010.

In August 2009, the Epics Project was transferred to APS. The transfer was discussed with Dr. Fu in a meeting held on August 6, 2009. Dr. Fu asserts that he contributed in excess of $95,000.00 in direct capital contributions to Epics and the Project. According to the Epics account records, Dr. Fu did not make any direct monetary capital contributions to Epics or the Project after July 2009. The Epics account records further reflect that Dr. Fu's capital contributions to Epics prior to July 2009 were made from a joint checking account he held with Hong Fu ("Ms. Fu"), his former wife.

In late fall 2009, ProAce provided plaintiffs with a working model of the Epics JavaScript Program. However, the Epics JavaScript Program was nonfunctional and, therefore, plaintiffs abandoned it at that time. Dr. Fu contends that plaintiffs did not have the capability to unilaterally abandon the Project.

Later in fall 2009, APS hired ProAce to assist APS in developing the APS Silverlight Program as an entirely new vehicle to capture the Concept (the "APS Silverlight Project"). Dr. Fu did not make any matching capital contribution to the APS Silverlight Program.

In June 2010, Dr. Fu initiated a divorce proceeding against Ms. Fu, Case No. FD-2010-2551, Oklahoma County District Court, State of Oklahoma (the "Divorce Proceeding"). Subsequently, the Oklahoma County District Court, State of Oklahoma entered a Decree of Dissolution of Marriage ("Divorce Decree") in the Divorce Proceeding. The Divorce Decree states, in pertinent part:

> The parties have not concluded all of their discovery, and therefore each represent and warrant that to the best of their information, knowledge and belief, the information contained herein, and in

> attached Exhibit A is an accurate reflection of the assets, property, debts and liabilities of the parties, whether joint, separate or otherwise characterized.

Divorce Decree, attached as Exhibit 2 to plaintiff's First Amended Complaint. The Divorce Decree was missing Exhibit A. Additionally, there was no mention of Dr. Fu's interest in Epics or the Project; Dr. Fu's alleged interest in Epics and the Project was not one of the assets divided in the Divorce Decree. Dr. Fu's attorney prepared the Divorce Decree.

On or about December 31, 2010, plaintiffs abandoned the APS Silverlight Project, ended their relationship with ProAce, and hired a new development and support team to begin developing the APS Firefly Program (the "APS Firefly Project").[3] Dr. Fu contends that plaintiffs did not have the capability to unilaterally abandon the Project. Dr. Fu further contends that the Firefly Project was an application of the Concept. Dr. Fu did not invest money in the APS Firefly Project.

On April 6, 2012, plaintiffs filed their Amended Complaint, seeking, *inter alia*, declaratory judgment regarding Dr. Fu's partnership interest and copyright interest. Plaintiffs now move for partial summary judgment on the grounds that (1) Dr. Fu is judicially estopped from asserting interest in Epics or the Concept and (2) Dr. Fu must account for his unpaid capital contributions.

II.  Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines

---

[3]Dr. Fu contends that the Project entailed all the software development, including the Epics Java Script Project, the APS Silverlight Project, and the APS Firefly Project. Dr. Fu asserts that the Project was not divided into three separate phases.

the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

Plaintiffs assert that Dr. Fu should be judicially estopped to claiming any interest in the Project or Epics based upon his prior inconsistent position in the Divorce Proceeding. Dr. Fu contends that Oklahoma law for judicial estoppel should apply instead of federal judicial estoppel and that a mistake in the attachment of an exhibit in the Divorce Proceeding prevents the application of judicial estoppel in this matter.

The doctrine of judicial estoppel is applied in federal courts even when analyzing claims arising under state law. *See Eastman v. Union Pac. RR. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). "Simply put, a federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise." *Id.*

Additionally, the Tenth Circuit has clarified that:

> [w]here a party assumes a certain position in a legal proceeding, and

>succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. Although noting that this rule, known as judicial estoppel, is probably not reducible to any general formulation of principle, the Court noted several factors which other courts have typically used to determine when to apply judicial estoppel. First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied in the narrowest of circumstances. Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (internal quotations and citations omitted). These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). Furthermore, "it *may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Eastman*, 493 F.3d at 1157.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Dr. Fu and viewing all reasonable inferences in Dr. Fu's favor, the Court finds that judicial estoppel is appropriate in this matter.[4] First, the Court finds that Dr. Fu's position was

---

[4] Dr. Fu has failed to provide argument based upon the factors set forth in *Johnson*. Rather, Dr. Fu asserts that Oklahoma case law for judicial estoppel should apply. However, as noted above, the Court applies the federal doctrine of judicial estoppel in this matter. *See Eastman*, 493 F.3d at 1156.

clearly inconsistent with his earlier position in the Divorce Proceedings. While Exhibit A may not have been attached to the Divorce Decree, the Divorce Decree makes no mention of Dr. Fu's interest in the Project or Epics. In fact, Ms. Fu testified that "[d]uring the Divorce Proceeding, [Dr.] Fu did not disclose any interest in EPICS Medical to me or to the Oklahoma County District Court." Declaration of Ms. Fu, attached as Exhibit 1 to plaintiffs' First Amended Complaint.

Second, based upon the evidence submitted, and particularly the fact that Dr. Fu's attorney prepared the Divorce Decree, the Court finds that Dr. Fu persuaded the Oklahoma County District Court, State of Oklahoma to accept his earlier position that the Project and Epics are not considered Dr. Fu's asset. The Court further finds that permitting Dr. Fu to now assert a property interest in the Project or Epics would create the perception that either the court in the Divorce Proceeding or this Court was misled.

In regards to the third factor of judicial estoppel, the Court finds that said factor does not favor plaintiffs. Specifically, while Dr. Fu avoided a potential division of interest in the Project or Epics with Ms. Fu, Dr. Fu did not receive an unfair advantage against plaintiffs or impose an unfair detriment to plaintiffs; Ms. Fu is the party to receive the unfair detriment as Dr. Fu's alleged property interest in the Project and Epics was not included in the Divorce Proceeding.

Finally, the Court finds that there is no inadvertence or mistake as to prevent the application of judicial estoppel. While Dr. Fu asserts that the failure to disclose his interests in the Project or Epics was a mistake, Dr. Fu testified that he believed said interest was one of his assets and elected to exclude it from the Divorce Decree. Therefore, the Court finds that Dr. Fu's inadvertence or mistake, if any, does not warrant the exclusion of an application of judicial estoppel.

In weighing the factors above, the Court finds that plaintiffs are entitled to partial summary

judgment based upon judicial estoppel. Specifically, Dr. Fu is estopped from declaring interests in the Project and Epics.[5]

IV. Conclusion

For the reasons set forth above, the Court GRANTS plaintiff's Motion for Partial Summary Judgment [docket no. 37].

**IT IS SO ORDERED this 6th day of May, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs also assert, in the alternative, that Dr. Fu must account for his unpaid capital contributions. In light of the Court's finding that Dr. Fu is estopped from claiming interest in the Program and Epics, the Court further finds that plaintiff's claim for unpaid capital contributions is now moot.